IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KMG PROPERTIES, <br> a Pennsylvania General Partnership, <br><br> Plaintiff, <br><br> vs. <br><br> INTERNAL REVENUE SERVICE, <br><br> Defendant. | Civil Action No. 08-1544 <br> Judge Nora Barry Fischer |

## MEMORANDUM OPINION

**I.  Introduction**

This matter comes before the Court on Defendant Internal Revenue Service's ("Defendant") Motion to Dismiss for Lack of Jurisdiction Plaintiff KMG Properties' ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). (Docket No. 5). Plaintiff filed its Complaint on November 5, 2008 alleging that Defendant violated 26 U.S.C. § 7426 by intentionally and wrongfully levying against Plaintiff's rental income to satisfy payroll taxes owed by an entirely different entity, Grandeur Estates, Inc. (Docket No. 1).

**II.  Factual and Procedural Background**

Plaintiff, a Pennsylvania General Partnership with its principal place of business in Monogahela, Pennsylvania, filed the instant action on November 5, 2008 against Defendant, the United States Internal Revenue Service. (Docket No. 1 at 1). Plaintiff avers that this Court has subject matter jurisdiction over its claim pursuant to 26 U.S.C. § 7426, which provides a civil cause of action against the United States for persons other than the taxpayer for wrongful levy. 26 U.S.C.

§ 7426(a)(1) (1998).[1] The facts essential to Plaintiff's claim and the Court's disposition of the instant motion are gleaned from Plaintiff's Complaint and the attached exhibits. They are as follows.

Prior to the end of 2002, Plaintiff owned real estate referred to as the Grandeur Estates Property, located at 1961 North Main Street, Washington, PA (hereafter "Property"). (Docket No.1 at 2; Docket No. 1-4 at 1). An entity known as Grandeur Estates, Inc., a Pennsylvania corporation (hereafter "Estates"), which is "separate and distinct" from the Property, operated a personal care facility on the Property. (Docket No. 1 at 2, 4). Kenneth McGavitt was the president and the only shareholder of Estates. (*Id.*). McGavitt also co-owns Plaintiff with Marty Gefsky. (*Id.*). Specifically, McGavitt owns 65 percent of KMG while Gefksky owns 35 percent. (*Id.*). Plaintiff leased the Property to Estates. (Docket No. 1 at 2).

In 2003, for financial reasons, Estates ceased operations of the personal care facility on the Property and terminated its lease with Plaintiff. (*Id.*). The Estates has been inactive since 2003 as reflected in its filed tax returns. (*See* Docket No. 1-5). At the time it ceased operations, the IRS alleged that the Estates owed significant payroll taxes. (Docket No. 1 at 3). It then assessed civil penalties for these taxes against McGavitt. (Docket No. 1 at 3). At the hearing on Defendant's motion held on May 26, 2009, counsel for Defendant explained that the Estates owed payroll taxes comprised of income tax money it withheld from its employees' pay. (Docket No. 24 at 7:16-25). The penalty assessed against the Estates is called the "trust fund recovery penalty," which counsel for the Defendant argued can be assessed against a party who is not the employer. An officer of the employer who is believed to have had the duty to withhold payroll tax is required to keep them in

---

[1] See discussion *infra* at pgs. 11-13.

trust for the United States and pay them over. (Docket No. 24 at 7: 23-25; 8:1-3); *see* 26 U.S.C. § 6672(a)(any person required to collect and pay over taxes who fails to do so shall be liable for a penalty equal to the total amount of the tax evaded). That individual may be targeted by the IRS and may be liable for a penalty. *Id.* The penalty is equal to the amount of withheld trust fund taxes plus non-trust fund taxes that remain owing. (*Id.* at 8: 1-9); 26 U.S.C. § 6672(a). Here, McGavitt, as president and shareholder of the Estates, would classify as the individual representative required to withhold and pay over to the IRS such taxes.[2] (*See* Docket No. 24 at 8: 1-4). Further, the Government contends that McGavitt reported on his 1099 income tax return the rental income he received on the Property. (Docket No. 24 at 9: 9-16).

Martin Bujaky ("Bujaky"), the accountant for the Estates and McGavitt,[3] worked with the then Revenue Officer assigned to the case, Bernard Grimm, in an attempt to resolve the tax problems for both the Estates and McGavitt. (*Id.*). A letter dated January 16, 2007 from Officer Grimm to Bujaky states that McGavitt had paid in full the civil penalties assessed against him for not paying the trust fund taxes of the Estates. (Docket No. 1-6). Plaintiff further claims that as of January of 2007, Bujaky had established to Officer Grimm's satisfaction that the Estates owned no assets. (Docket No. 1 at 3). Therefore, Plaintiff avers, no collection action was taken by the IRS and Officer Grimm had no further contact with Bujaky or McGavitt. (*Id.*).

After the Estates ceased operations, it assigned its lease with Plaintiff for use of the Property

---

[2] *See also* discussion, *infra*, at note 11.

[3] At the motion hearing, counsel for Plaintiff stated that Mr. Bujaky is also the accountant for Plaintiff. (Docket No. 25 at 16: 3-6).

to a company called Visionquest, Inc.[4] (*Id.*). Significantly, the lease defines the lessor as KMG Properties, t/a Grandeur Estates, a Pennsylvania partnership." (Docket No. 25 at 2). Subsequently, on June 15, 2007, Visionquest received a notice of levy from Officer Grimm for rental payments it was obligated to pay Plaintiff for use of the Property under the lease. (*Id.*; Docket No. 1-7). The notice states that taxpayer, the Estates owes $ 43,204.61 to the IRS. (*Id.*). Plaintiff claims that Revenue Officer Mary Arndt initiated this levy. (Docket No. 1 at 3; Docket No. 1-7). However, the notice of levy states that any reply to the notice should be sent to Officer Grimm and it is Officer

---

[4]
Plaintiff did not aver a specific date on which the lease was assigned nor has Plaintiff averred any specific facts regarding the lease or attached it to the Complaint as an exhibit. As discussed herein, a plaintiff has the burden of proving subject matter jurisdiction. See discussion *infra* at pgs. 7-8. At the motion hearing, at the Court's request, Defendant's counsel provided the Court with a copy of the lease between Plaintiff and Visionquest. (Docket No. 25 at 23: 20-25). On May 27, 2009, Defendant filed a Notice of Corrected Exhibit. (Docket No. 22). The Court noted, however, that both of these versions of the lease submitted by Defendant appear to be missing pages. Upon the Court's further inquiry on June 25, 2009, Plaintiff's counsel advised that she had located a full and complete copy, which was provided to the Court and opposing counsel via facsimile that same day and made part of this Court's docket. (*See* Docket No. 25).

Both versions of the lease as filed on the docket by the parties (Docket No. 22-2 and Docket No. 25) provide that it constitutes the entire contract between Plaintiff and Visionquest and also identifies the lessor as "KMG Properties, t/a Grandeur Estates." (Docket No. 22-2 at 1; Docket No. 25 at 2). Both versions provide that the lease shall be interpreted under Pennsylvania law. (Docket No. 22-2 at 2; Docket No. 25 at 16). There are discrepancies, however, between the two versions. The lease as filed by Plaintiff includes an amendment dated December 30, 2002 to the November 1, 2001 original lease which states that the lease is a continuing, month-to-month lease, extending the lease from a three year period to a five year period to end on October 31, 2006, with an automatic renewal from November 1, 2006 to October 31, 2011. (Docket No. 25 at 4, 18). It further provides that the monthly rent amount starting on April 1, 2002 would be $10,000. (Docket No. 25 at 4). It is signed by Mr. McGavitt. (*Id.*). The lease as filed by the IRS contains an amendment dated December 28, 2004, which is also signed by Mr. McGavitt. (Docket No. 22-2 at 4). This amendment extends the lease from December 28, 2004 for a period of five years, but with a 90-day early termination option and a monthly rent amount of $2,000. (Docket No. 22-2 at 4). Under the 2004 amendment, the new five year period began on January 1, 2005 and ends on December 31, 2009. (*Id.*). Both the 2002 and 2004 amendments state that the terms of the amendments as they modify and amend the lease shall control, and in all other respects the lease, as amended shall be in full force and effect. (Docket No. 22-2 at 4; Docket No. 25 at 18). Pennsylvania law holds that where several instruments are made part of one transaction, they will be read together and construed with reference to the other, although the instruments may have been executed at different times. *Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.*, 959 A.2d 438, 445 (Pa. Super. Ct. 2008).

Because Plaintiff bears the burden of proving that its claims are properly before the Court, *Development Fin. Corp.*, 54 F.3d at 158, in its analysis herein, the Court considers the lease as filed by Plaintiff as the governing lease. (*See* Docket No. 25); *Gould Elecs., Inc.*, 220 F.3d at 176 (in reviewing a Rule 12(b)(1) challenge, a court may only consider documents referenced by the plaintiff). At a minimum, Plaintiff claims rental payments of $2,000 per month.

4

Grimm's signature that appears on the "Signature of Service Representative" line. (*Id.*).

The crux of Plaintiff's claims is that Officer Arndt took over the Estates' case file and "embarked on a course of wrongful, illegal, and excessive execution against Plaintiff, intending to completely destroy Plaintiff and McGavitt." (Docket No. 1 at 3-4). Plaintiff specifically claims that Officer Arndt "unilaterally decided that KMG Properties owed all the taxes, penalties and interest accrued that were owed by Grandeur Estates, Inc." (Docket No. 1 at 4). According to Plaintiff, she justified the levy on the grounds that Plaintiff was an "alter ego" of the Estates. (*Id.*). Plaintiff then contends that Ms. Arndt based this decision on an incorrect W9 tax form filed by the Estates. (Docket No. 1 at 4, Docket No. 1-8). On the W9, the Estates "dropped the formality ... [and] used the same name as the property owned by KMG Properties." (Docket No. 1 at 4). Plaintiff also attests that Officer Arndt made her determination despite the fact that Plaintiff and the Estates are separate and distinct legal entities with their own tax identification numbers and completely different business operations. (*Id.*).

Plaintiff next avers that Officer Arndt did not give it an opportunity to appeal her decision regarding the "alter ego"[5] status of the Estates and McGavitt and that it has been deprived of Visionquest's rental income for over 17 months. (Docket No. 1 at 5; Docket No. 24 at 17: 8-17; 19: 2-7). Plaintiff claims to have paid between $28,000 and $34,000 to the IRS for penalties and interest allegedly owed the Estates. (*Id.*). Further, despite repeated appeals by both Plaintiff and Visionquest through their respective representatives, Plaintiff maintains that Officer Arndt will not review and

---

[5] The term "alter ego" is defined as "a corporation used by an individual in conducting personal business, the result being that a court may impose liability on the individual by piercing the corporate veil when fraud has been perpetrated on someone dealing with the corporation." BLACK'S LAW DICTIONARY (8th ed. 2004, Online); *see also Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 192 (3d Cir. 2003); *Good v. Holstein*, 787 A.2d 426, 430 (Pa. Super Ct. 2001).

substantiate her decision and continues to require Visionquest, Inc. to forward its rental payments to the IRS. (Docket No. 1 at 5). In a letter dated February 13, 2008 to Visionquest, Officer Arndt stated that Visionquest was required to continue forwarding to the IRS the rental payments due under the lease to Plaintiff "per the levy issued by Revenue Officer Bernard Grimm." (Docket No. 1-9). Additionally, Officer Ardnt wrote in the letter dated February 13, 2008, that if McGavitt had any questions concerning the levy, to contact her. (*Id.*). Plaintiff also points to a letter dated August 7, 2008 wherein Officer Arndt contended that as of that date, the Estates still owed $19,630,97. (*Id.*).

Against this backdrop, Plaintiff bases its section 7426 claim on the allegations that Officer Arndt "intends to continue her levy and financial strangulation" of Plaintiff's rental income in order to destroy its business and force it into bankruptcy. (Docket No. 1 at 5). Specifically, Plaintiff maintains that the levy was intentionally issued against the wrong entity. (*Id.*). That is, Officer Ardnt "maliciously and recklessly" classified Plaintiff as the Estates' "alter ego" and sought taxes owed by the Estates despite knowledge that the Estates had no assets. (*Id.*). Plaintiff seeks compensatory damages in the amount of the money that was wrongfully seized, plus costs. (Docket No. 1 at 7).

On January 12, 2009, Defendant filed a Motion to Dismiss for Lack of Jurisdiction and supporting brief, arguing that the Court lacks subject matter jurisdiction because Plaintiff did not file its suit within section 7426's nine month statute of limitations. (Docket Nos. 6 and 8). In turn, Plaintiff filed its Response and Brief in Opposition to Defendant's motion on January 30, 2009, (Docket Nos. 9 and 10), arguing that the statute of limitations has not begun to run, and if it has, Plaintiff has timely brought its claim. Thereafter, on February 13, 2009, Defendant filed a reply to

Plaintiff's responsive brief. (Docket No. 11).[6] A hearing and argument[7] were held on Defendant's Motion to Dismiss on May 26, 2009.[8] (*See* Docket No 21; and Transcript of Hearing, Docket 24).

As the Government's motion has been fully briefed and argued, it is ripe for disposition. The Court now turns to the applicable standard of review.

### III. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the lack of subject matter jurisdiction over a plaintiff's claims. *See* Fed. R. Civ. Pro. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Petruska v. Gannon University*, 462 F.3d 294, 302 (3d Cir. 2006)(quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). As the party asserting jurisdiction, Plaintiff "bears the burden of showing that its claims are properly before the district court." *Development Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995); *see also Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991), *cert. denied*, 501 U.S. 1222 (1991)("[w]hen subject matter jurisdiction

---

[6] On March 19, 2009, Defendant filed a Notice of Partial Withdrawal of Argument relating to Plaintiff's claim for economic damages noting that a longer statute of limitations applies to said claim; however, on March 20, 2009, Defendant filed another Motion to Dismiss regarding Plaintiff's economic damages claim arguing that Plaintiff did not meet the statutory requirements before bringing said claim. (Docket Nos. 12 and 13, respectively). After granting Plaintiff additional time to respond to Defendant's second motion (Docket Nos. 15 and 16), the parties filed a joint Stipulation to Partial Dismissal without Prejudice of Plaintiff's claim for economic damages. (Docket No. 17). Accordingly, the Court granted said Stipulation, dismissing with prejudice Plaintiff's economic damages claim and terminating Defendant's related motion to dismiss. (Docket No. 18).

[7] A copy of portions of the lease between Plaintiff and Visionquest, offered by Defendant's counsel, was the only evidence presented at the hearing. (Docket No. 24 at 23:17-22). Subsequently, the Court received a full copy of the lease. (*See* note 4, *supra*).

[8] The hearing was originally set for March 25, 2009 but was continued until further order of the Court in anticipation of the filing of Defendant's second motion to dismiss, see note 5, *supra*. (Text Entry Order, Mar. 19, 2009). Thereafter, it was re-scheduled for May 28, 2009 and, upon the parties' Consent Motion to Advance the hearing, it was re-set again for May 26, 2009. (Docket Nos. 19 and 20, respectively).

7

is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion"). In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court must distinguish between facial attacks and factual attacks. *Petruska*, 462 F.3d at 302.

A facial attack challenges the sufficiency of the pleadings, and the court must accept the plaintiff's allegations as true. *Id.* When a defendant attacks a complaint on its face, he "[asserts] that considering the allegations of the complaint as true, and drawing all reasonable inferences in favor of [plaintiff], the allegations of the complaint are insufficient to establish a federal cause of action." *Mullen v. Thompson*, 155 F.Supp.2d 448, 451 (W.D. Pa. 2001). Dismissal is proper under Rule 12(b)(1) only when "the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous." *Kehr Packages*, 926 F.2d at 1409 (quoting *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). In reviewing a facial attack, the court may only consider the plaintiff's allegations and documents referenced therein and attached thereto. *Gould Elecs, Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

On the other hand, when a defendant launches a factual attack on subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Petruska*, 462 F.3d at 302 (quoting *Mortensen*, 549 F.2d at 891). In a factual attack, the court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings. *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

In evaluating a Rule 12 motion, a court "may look beyond the complaint to matters of public

record, including court files and records ... and documents referenced in the complaint or essential to a plaintiff's claim which are attached to either the [c]omplaint or the defendant's motion." *Spence v. Brownsville Area Sch. Dist.*, Civ. A. No. 08-0626, 2008 U.S. Dist. LEXIS 55026, at *7 (W.D. Pa. July 15, 2008)(citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). In resolving a challenge to subject-matter jurisdiction, a court may consider evidence beyond the pleadings. It has wide discretion to consider documents outside of the pleadings and to conduct a limited evidentiary hearing to resolve disputed jurisdictional facts. *Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003). In such a case, a court's reference to evidence outside the pleadings does not convert the motion to dismiss to a Rule 56 motion for summary judgment. *Id.* Furthermore, where a plaintiff has relied upon documents in framing the complaint but has not attached them, "the necessity of translating a Rule 12 motion into one under Rule 56 is largely dissipated." *Cortec Indus., Inc. v. Sum Holding*, 949 F.2d 42, 48 (2d Cir. 1991), *cert. denied*, 112 S.Ct. 1561 (1992). A district court may consider evidence and make findings of fact necessary to rule on subject matter jurisdiction before trial if the jurisdictional facts are not intertwined with the merits. 12 MOORE'S FEDERAL PRACTICE § 12.30 (Matthew Bender 3d. ed).

IV.     **Discussion**

    A.     **Overview of Arguments**

Defendant has asserted a facial attack on the subject matter jurisdiction of Plaintiff's claim, arguing that even if Plaintiff's allegations are accepted as true, Plaintiff has not shown that it brought its claim within the nine month statute of limitations for wrongful levy actions provided for in 26

U.S.C. § 6532(c).[9] (Docket No. 6 at 1). Specifically, Plaintiff filed its Complaint on November 5, 2008 while the notice of the levy was served on June 15, 2007, a time difference of a little less than 17 months. (*Id.*). Therefore, Defendant argues Plaintiff's claim should be dismissed in its entirety. (*Id.*). To that end, Defendant argues that this Court lacks subject matter jurisdiction "because the United States has not waived its sovereign immunity with respect to suits for wrongful levy filed more than nine months after the date of the levy." (*Id.*).

At the motion hearing, Defendant's counsel supplemented the Government's position arguing that the levy, made when the notice of the levy was served, was not against the rental payments, but against Plaintiff's property right. (Docket No. 24 at 3:10-16). Further, counsel argued that the issue of whether the levied property was the Estates' or not was not before the Court. (Docket No. 8:10-19).

In response, Plaintiff sets forth three arguments in support of its contention that this Court has subject matter jurisdiction. First, Plaintiff argues that the levy issued on June 15, 2007 was a one time levy for one month's rental income and is not a continuing levy. (Docket No. 9 at 2; Docket No. 10 at 2-3). It was valid for a one-time, "snapshot" levy of payment owed by Visionquest. (*Id.*). Furthermore, Plaintiff has conceded that the statue of limitations has run for the June 15, 2007 notice. (Docket No. 25 at 22: 18-21). According to Plaintiff, any subsequent payments made by Visionquest to the IRS legally required the issuance of an additional notice of levy. (Docket No. 9 at 2; Docket No. 10 at 4). Therefore, since the IRS wrongfully received 17 months of rental payments without prior notice, the statute of limitations has not run for those payments. (*Id.*; Docket

---

[9] For a complete reference and discussion of section 6532(c), see *infra*, pgs. 11-13.

No. 25 at 22:18-22, ). Second, Plaintiff argues that the letter from Officer Arndt dated February 13, 2008 to Visionquest constitutes a new notice of levy. Hence, this suit was filed within the nine month limitations period. (Docket No. 9 at 2; Docket No. 10 at 5-6). Third, Plaintiff argues that additional notices could have been sent to Visionquest, which would change the time at which the statute would have begun to run. (*Id.*). Plaintiff avers that if the IRS were following proper procedure, it would have sent additional notices for every month's rental payment as required by law. (Docket No. 9 at 2; Docket No. 10 at 6). Therefore, Plaintiff argues, since a question of fact exists as to whether additional notices were sent, thus affecting the time at which the statue of limitations commenced, the Court should treat Defendant's Rule 12 motion for dismissal as one for summary judgment and deny it based on the existence of genuine issues of material facts. (Docket No. 9 at 2; Docket No. 10 at 7). Plaintiff has also claimed that Officer Arndt wrongfully determined that Plaintiff is an "alter ego" of the Estates, despite the fact that they are separate and distinct entities. (Docket No. 1 at 4). Based on this assessment, Officer Arndt "unilaterally made the decision to cut off" Plaintiff's rental income.[10] (*Id.* at 5).

---

10

Although this argument was initially raised by Plaintiff, Plaintiff appears to be moving away from this position as it was neither argued in its brief in response to Defendant's motion nor argued by counsel at the motion hearing. Defendant's counsel stated at the hearing that the "alter ego" issue was not properly before the Court at this time because the Court lacks jurisdiction to address it. (Docket No. 24 at 9: 18-23). However, the Court notes the following. Under the Internal Revenue Code ("IRC"), the IRS has the authority to assess penalties against any person or corporate employer who is required to collect and pay over withholding taxes and fails to do so. 26 U.S.C. § 6672(a). The penalty may be comprised of the total amount of taxes evaded or not collected. *Id.* For purposes of this section, the term "person" includes an officer or employee of a corporation, or a member or employee of a partnership, "who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b). "Person" is to be construed to include all those connected with a corporation and have responsibility and authority to avoid default of the IRC, even though more than one person may be liable. *Harrington v. United States*, 504 F.2d 1306 (1st Cir. 1974).

In enacting certain provisions of the IRC, such as section 6672 and section 7426, discussed below, Congress sought to "balance[] the interest of the Government in the speedy collection of taxes against the interest of any claimants to the property." *United States v. National Bank of Commerce*, 472 U.S. 713, 729 (1985). Permitting the IRS to levy on assets "at once" is one such reconciliation of those interests, "leaving ownership disputes to be resolved in a postseizure administrative or judicial proceeding." *Id.* (citing *United Sand & Gravel Contractors, Inc. v. United States*,

To resolve the instant matter, the Court must first review the applicable statutory provisions governing Plaintiff's claim.

### B. Pertinent Statutory Authority

#### 1. Wrongful Levy Action Under 26 U.S.C. § 7426

Section 7426(a)(1) provides third parties with a civil cause of action to recover from the IRS property that was "wrongfully levied." 26 U.S.C. § 7426(a)(1) (1999); *Becton Dickinson & Co. v. Wolckenhauer*, 215 F.3d 340, 343 (3d Cir. 2000). Section 7426(a)(1) provides:

> If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

26 U.S.C. § 7426(a)(1). The IRS Secretary's authority to issue such a levy derives from 26 U.S.C. § 6331(a), which states that if a person is liable to pay any tax and refuses to do so, within 10 days after notice and demand to the taxpayer, the Secretary may lawfully collect such tax by issuing a levy upon all property and rights to property belonging to such person. 26 U.S.C. § 6331 (a). The term "levy" as used in these sections includes the power of "distraint and seizure by any means." 26 U.S.C. § 6331 (b). Relevant here, a levy extends to property possessed and obligations existing at the time it is issued. *Id.* That is, for the purposes of this statue, a levy extends to obligations owed to the

---

624 F.2d 733, 739 (5th Cir. 1980)). In evaluating the terms of the Code, the IRS's understanding of the same is entitled to considerable deference. *National Bank of Commerce*, 472 U.S. at 730.

    Given this authority, the Court finds that Plaintiff's contention that it is not the "alter ego" of the Estates, and therefore, the IRS wrongfully seized its rental income, has little merit.

taxpayer in existence at the time the levy is issued. 26 C.F.R. § 301.6331-1(a). A taxpayer's obligations exist when the liability of the obligor to the taxpayer is fixed and determinable at the time of the levy although the right to receive payment by the taxpayer may be deferred until a later date. *Id.*

2.  Statute of Limitations for Section 7426's Claims

Section 6532(c) of the Internal Revenue Code, titled "Periods of limitations on suit," sets forth the relevant time limitation for wrongful levy actions brought pursuant to section 7426(a)(1). It provides:

> (c) Suits by persons other than taxpayers. -
>
> (1) General Rule.- Except as provided by paragraph (2), no suit or proceeding under section 7426 shall be begun after the expiration of 9 months from the date of the levy or agreement giving rise to such action.
>
> (2) Period when claim is filed. - If a request is made for the return of property described in section 6343(b), the 9-month period prescribed in paragraph (1) shall be extended for a period of 12 months from the date of the filing of such request or for a period of 6 months from the date of mailing by registered or certified mail by the Secretary to the person making such request of a notice of disallowance of the part of the request to which the action relates, whichever is shorter.[11]

26 U.S.C. § 6532(c)(1999); *see also Becton*, 215 F.3d at 344 (holding that section 6532 cannot be equitably tolled). This jurisdictional statute clearly provides that "no suit or proceeding under section 7426 shall be begun after the expiration of 9 months from the date of the levy." *Id.* As stated

---

[11] Section 6343(b) provides that it shall be lawful for the Secretary to return property, or an amount of money equal to the amount of money levied upon, if it is determined that the property or money was wrongfully levied upon. 26 U.S.C. § 6343(b). Property may be returned at any time, while an amount equal to the amount of money levied upon may be returned at any time before the expiration of nine months from the date of such levy. *Id.*

13

in section 6532(c)(2), if a written request for the return of property is made to the Secretary, the nine month period may be extended for either twelve or six months, depending on how the request was made, that is, by filing or by mail. 26 U.S.C. § 6532(c)(2); *see Mock v. United States, IRS*, Civ. A. No. 93-1634, 1994 U.S. Dist. LEXIS 4642, at *5 (M.D. Pa. Mar. 28, 1994).

      **C.**      **Application of Statute of Limitations**

When a statute of limitations is jurisdictional, as is the case here, it cannot be modified and non-compliance is an absolute bar to suit. *Beckton*, 215 F.3d at 343. Additionally, as Plaintiff has sued the United States, sovereign immunity is implicated. It is black letter law that the United States cannot be sued for money damages absent express consent of Congress. *Block v. North Dakota*, 461 U.S. 273, 287 (1983). Section 7426 is such a waiver of sovereign immunity. Section 6532(c) sets forth the limitations on that waiver. It must be strictly observed in favor of the United States, and exceptions will not be lightly implied. *Beckton*, 215 F.3d at 346; *see also Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."); and *Block*, 461 U.S. at 287 (same).

      1.      The June 15, 2007 Notice of Levy

It is undisputed that the instant action was filed on November 5, 2008, after more than nine months had expired since the receipt of notice of the levy dated June 15, 2007 from Officer Bernard Grimm. As discussed above, Plaintiff contends, however, that the notice was valid only for one month's rental payment. (Docket No. 10 at 2-3; Docket No. 24 at 18: 5-20; 19: 2-8; 22: 18-21). Plaintiff concedes that the statute of limitations has run for the first monthly rental payment. (Docket No. 24 at 20: 19-23). However, Plaintiff maintains that the IRS's seizure of the subsequent 17 monthly payments was illegal because no notice of levy was ever served for those payments and the

statute has not run. (*Id.*). Plaintiff also argues that the lease with Visionquest is not an installment contract and, thus, the IRS should not have levied rental payments for the months following June of 2007 (Docket No. 24 at 29: 17-25; 30: 2-6).

Defendant argues in reply that the June 15, 2007 notice of levy was made when it was served and it attached to all future payments under the lease between Visionquest and Plaintiff because Visionquest's obligation to pay was fixed and determinable as of the date of the levy.[12] (Docket No. 11 at 3; Docket No. 24 at 4:3-5; 5:1-5; 10:5-8; 28: 3-7). Specifically, the levy attached to Plaintiff's right to the property. (Docket No. 24 at 10: 9-12). Thus, the IRS maintains that it was not required to send a notice before each monthly rental payment was due as it constructively possessed the future payments as of June 15, 2007. (Docket No. 11 at 3; Docket No. 24 at 3: 10-13; 28:3-7).

Section 6331(b) provides that a levy reaches property and obligations in existence at the time of the levy.[13] Property rights are considered to be in existence for purposes of a levy when they are fixed and determinable. 26 C.F.R. § 301.6331-1(a)(1). A levy will attach to the vested accrued right to receive money in the future as when a taxpayer's fixed and determinable right to receive payment is deferred until a later date. *Id.*; Rev. Rul. 55-210, 1955-1 C.B. 544. To that end, "the fact periodic payments were made pursuant to the contract rights is not material relative to the levy. As such, only one levy [is] required to bring [a] contract right into constructive possession of the United States."

---

[12] The levy specifically states that Visionquest was required "to turn over...[the taxpayer's] property and rights to property (sch as money, credits, and bank deposits) that you have or which you are already obligated to pay." (Docket No. 1-7 at 1).

[13] A levy does not reach property acquired by the taxpayer after the levy has been made and does not reach payments promised a taxpayer but contingent upon the performance of some future service. 26 C.F.R. § 301.6331-1(a)(1); *2001 G.L.B. LEXIS 6* (June 2001).

*In Re Kirk*, 100 B.R. 85, 89 (M.D. Fla. 1989)(citing *Phelps v. United States*, 421 U.S. 330 (1975)).[14]

The lease provides that it is a continuing month-to-month lease and that it is for a period of five years beginning on January 1, 2005 and ending on December 31, 2009, while it gives Visionquest the right to renew any time prior to its expiration. (Docket No. 22-2 at 4). The current monthly rental payment is at least $2,000 per month and possibly as much as $10,000 per month.[15] (*Id.*). The levy, for the amount due of $ 43,204.61, issued on June 15, 2007, specifically instructs Visionquest as follows:

> The Internal Revenue Code provides that there is a lien for the amount that is owed. Although we have given notice and demand required by the Code, the amount owed hasn't been paid. This levy requires you to turn over to us this person's property and *rights to property* (such as money, credits, and bank deposits) that you have or which are already obligated to pay this person.[16]

(Docket No. 1-7)(emphasis added).

Under these facts, the levy on Plaintiff's right to receive payment under the lease with Visionquest attached to Plaintiff's present right to receive future rental payments because the right

---

[14] Plaintiff has also argued that the levy does not fit the definition of a "continuing levy;" therefore, separate notices were required for the subject levy on rental payments. Section 6331(e) provides that lien on salary or wages of a taxpayer shall be classified as a "continuing levy," and shall be effective until such levy is released such as when the taxpayer's obligations have been satisfied. 26 U.S.C. § 6331(e); 26 U.S.C. § 6343. Thus, Plaintiff is correct that the levy was not a "continuing levy" as it did not seize wages or salary. However, this determination has no impact on the Court's decision.

[15] See note 4, *supra*.

[16] The notice of levy also provides the IRS's website, www.irs.gov, where taxpayers can find information on how to make an administrative wrongful levy claim under 26 U.S.C. § 6343(b). (Docket No. 1-7); *see also* http://www.irs.gov/pub/irs-pdf/p4528.pdf, last visited June 26, 2009. The website also provides information for taxpayers on certain notices or forms that they may have received from the IRS, what constitutes a levy, and a taxpayer's appeal rights. *See* http://www.irs.gov/individuals/article/0,,id=96199,00.html; http://www.irs.gov/individuals/article/0,,id=160745,00.htm, and http://www.irs.gov/businesses/small/article/0,,id=108341,00.html, last visited June 26, 2009.

to rental payments under the lease is fixed and determinable. *See United States v. Halsey*, Civ. A. No. 85-1266, 1986 U.S. Dist. LEXIS 24130 (C.D.Ill. 1986)(upholding levy on taxpayer's receipt of future rental payments under lease); *Weissman v. United States Postal Service*, 19 F.Supp.2d 254, 261 (D.N.J. 1998)(party obligated to pay under lease required to forward all subsequent rent payments pursuant to a levy as they came due). The fact that lease was a month-to-month lease does not affect the levy's attachment to future payments. The levy was effective to reach future payments not by reason of the fact that it continued to operate beyond the time at which it was made, which it does not, but rather because the levy reached Plaintiff's then existing right to the future payments under the lease, not the future payments themselves. This rationale is consistent with the Treasury Regulation governing same, 26 C.F.R. 301.6331-1(a)(1),[17] and with the rule that this Court must strictly construe waivers of the United States' sovereign immunity. *Lane*, 518 U.S. at 192.

Furthermore, the IRS has historically recognized contract rights as a right upon which one levy is sufficient to cover payments deferred until the future. *See In Re Kirk*, 100 B.R. at 88 (citing 26 U.S.C. § 6331(b)). Upon the issuance of the levy, Defendant thereafter constructively possessed Plaintiff's contractual right to receive the rental payments. *Phelps v. United States*, 421 U.S. 330 (1975)(holding a levy reduced funds to the United States constructive possession). No additional levy was needed as to each periodic rental payment as each payment came due to Plaintiff under the lease. Therefore, Plaintiff's arguments that the IRS's seizure of 17 monthly payments was illegal because no notice of levy was ever served fails. As this Court finds that Defendant was not required to send monthly notices, Plaintiff's argument that the Court should treat the Motion to Dismiss as

---

[17] The regulation found at 26 C.F.R. § 301.6331-1(a)(1) states that a levy extends to property possessed and obligations which exist at the time of the levy. An obligation exists if it is fixed and determinable. 26 C.F.R. § 301.6331-1(a)(1).

one for summary judgment likewise fails.

### 2. Officer Arndt's Letter Dated February 13, 2008

Plaintiff's argument that the February 13, 2008 letter from Officer Arndt constitutes a new notice of levy also fails. While Plaintiff is correct that there is no required form notice of levy (Docket No. 24 at 26:4-6), the February 13, 2008 letter from Officer Arndt to VisionQuest cannot be deemed to be a notice of levy as contemplated by 26 U.S.C. § 6331. Without considering any other deficiencies, the letter explicitly states that it was confirming the previous issuance of a levy by Revenue Officer Bernard Grimm. (Docket No. 1-9). Specifically, Officer Ardnt determined that the "levy *issued* to Visionquest" required it "to *continue* paying the rental payments...*per the levy issued by Revenue Officer Bernard Grimm*." (Docket No. 1-9)(emphases added). While the Internal Revenue Code does not mandate the use of any specific form of notice of levy on property or obligations, the Court is not persuaded that this letter has the validity of a new and separate notice of levy under these circumstances. *See* 26 U.S.C. § 6303(a); 26 C.F.R.§ 301.6303-1(a).[18] The letter was not informing Visionquest of a seizure of different property, rather, it was confirming a seizure that had already been made and of which Visionquest was aware. *C.f. United States v. Roccio*, 981 F.2d 587, 591 (1st Cir. 1992)(notice of levy found through the use of written and oral communication). The statute of limitations commenced with the notice of levy dated June 15, 2007 pursuant to which Visionquest forwarded its rental payments to the IRS. Therefore, Plaintiff was required to file its claim on or before March 15, 2008.

---

[18] Section 6303(a) and the regulation governing same require that the IRS provide notice of a demand for tax within sixty (60) days of making an assessment that a person is liable for unpaid taxes. 26 U.S.C. § 6303(a). The statute further requires that said notice be left at the dwelling or usual place of business or be sent by mail to the taxpayer's last known address. *Id*.

3. Plaintiff's Contacts with the IRS

Plaintiff has averred in its Complaint that "despite repeated appeals" by Visionquest and it through their representatives, Officer Arndt would not review and substantiate her decision. (Docket No. 1 at 5). Plaintiff also averred that Officer Arndt did not give it an opportunity to appeal her decision that Plaintiff is an "alter ego" of the Estates. (*Id.*). When questioned by the Court, Plaintiff's counsel stated that Plaintiff's "repeated appeals" to the IRS and Officer Arndt were not reduced to a writing. (Docket No. 24 at 21: 22-25; 23: 3-12). Defendant's counsel confirmed that there was no formal written appeal and that Plaintiff's contact with the IRS concerning the levy was all oral. (Docket No. 24 at 13:24-25; 14:1-2). Visionquest and the IRS had phone conversations and "at least telephonic meetings;" however, Plaintiff never submitted a formal written appeal. (Docket No. 24 at: 22: 8-12; 27: 11-13).

Under these facts, Plaintiff has not met the requirements of section 6532(c)(2) for an extension of the limitations period for up to 12 months. *See EC Term of Years Trust v. United States*, 550 U.S. 429, 432-33 (2007)("A short (9 month) statute of limitations is provided, because it is important to get such controversies decided quickly so the Government may pursue the taxpayer's own property if it made a mistake the first time."). Further, Plaintiff does not dispute the applicability of the nine month statute of limitations or that is bars any claim related to the June 15, 2007 notice of levy. (Docket No. 24 at 18:16-20; 20: 19-22). Additionally, Plaintiff does not dispute that its repeated contacts with the IRS were all oral and thus, those contacts cannot extend the limitations period per the language of section 6532(c)(2). (Docket No. 24 at 22:5-12). At oral argument, Plaintiff also agreed that equitable tolling does not apply to section 6532. (Docket No. 24 at 18: 16-20); *Becton*, 215 F.3d at 343-44 (statute of limitations for wrongful levy actions brought by a third

19

party is a jurisdictional bar that cannot be equitably tolled); *see also Schaefnocker v. Comm'r*, Civ. A. No. 08-278, 2008 U.S. Dist. LEXIS 41468, at *6 (W.D. Pa. May 22, 2008)(same). Accordingly, Plaintiff was required to bring its claim for wrongful levy within nine months of June 15, 2007, the date of Officer Grimm's notice of levy issued to Visionquest, i.e. on or before March 15, 2008. Because Plaintiff did not file this action until November 5, 2008, approximately 17 months after the levy was issued, this Court lacks subject matter jurisdiction over Plaintiff's claims against the United States.

## V. Conclusion

Based on the foregoing, Defendant's Motion to Dismiss [5] is GRANTED, with prejudice as to Plaintiff's claims against it for wrongful levy pursuant to 26 U.S.C. § 7426. An appropriate order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

CC/ECF:   All counsel of record.